## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

|  |  |
|---|---|
| ) | **MDL NO. 2873** |
| STATE OF NEW JERSEY, DEPARTMENT ) | |
| OF ENVIRONMENTAL PROTECTION, ) | **Master Docket No: 2:18-mn-2873** |
| ) | |
| Plaintiff, ) | **JUDGE RICHARD GERGEL** |
| ) | |
| v. ) | **Civil Action No:** _2:21-cv-146-RMG |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | **COMPLAINT** |
| ) | **JURY TRIAL DEMANDED** |
| ) | |

## COMPLAINT

Plaintiff, the New Jersey Department of Environmental Protection ("NJDEP" and/or "Plaintiff"), files this Complaint against Defendant the United States of America ("United States"), because the United States has failed to follow NJDEP's drinking water standards for perfluorooctane sulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA"). NJDEP has promulgated enforceable standards—regulating the amount of PFOA and PFOS in both drinking water and groundwater—in order to protect the health of New Jersey citizens and residents, including United States servicemen and servicewomen serving in the State. The United States has waived its sovereign immunity and agreed to follow NJDEP's health-based standards for drinking water for its in-state federal facilities. Nonetheless, the United States has not addressed the imminent and substantial endangerment to the human health of New Jersey's residents resulting from sources of PFOA and PFOS contamination in New Jersey's drinking water supplies. Thus, New Jersey is bringing this action to require the United States to immediately

address ground water contamination at or emanating from its facilities in New Jersey resulting in the contamination of drinking water supplies with PFOA or PFOS above New Jersey standards, and to act to protect those in New Jersey consuming such water, and/or to pay the costs to do the same.

## STATEMENT OF THE CASE

1.      This is a civil action brought by NJDEP against the United States pursuant to the federal Safe Drinking Water Act ("SDWA"), 42 U.S.C. §§ 300f et seq., and the New Jersey Safe Drinking Water Act ("NJSDWA"), N.J.S.A. §§ 58:12A-1 et seq., to ensure safe drinking water and to protect the health and safety of New Jersey residents, including personnel living and working at federal facilities and the surrounding communities.

2.      This action arises from (1) the discharge, disposal, and failure to contain or address contaminants discharged at facilities located in the State of New Jersey owned and/or operated by the United States, including all federal government agencies and departments, resulting in the ongoing and persistent contamination of public and private drinking water sources both onsite and offsite such facilities with PFOS and PFOA that presents an imminent and substantial endangerment to human health and (2) the United States' failure to take timely action to address and clean up the contamination of drinking water supplies to New Jersey's mandated levels for PFOS and PFOA.

3.      PFOS and PFOA are two persistent, bioaccumulative, and toxic substances within the class of manmade chemicals known as per- and polyfluoroalkyl substances ("PFAS"). They have been described as "emerging contaminants" due to rapid and relatively recent evolving public awareness regarding their adverse health effects and the technological capabilities for their detection in soil and groundwater at lower concentrations. Both have been designated as "hazardous substances" pursuant N.J.A.C. 7:1E, app. A, and both fall within the broad identical

definitions of "contaminant" under SDWA and NJSDWA as "any physical, chemical, biological, or radiological substance or matter in water." 42 U.S.C. § 300f(6); N.J.S.A. § 58:12A-3(b).

4.     PFOS and PFOA are highly mobile, persist indefinitely in the environment, bioaccumulate in individual organisms and humans, and biomagnify up the food chain. PFOS and PFOA are also associated with a wide variety of adverse health effects in humans. Exposure to very low levels of PFOA or PFOS in drinking water overwhelms exposures from other sources, such as food and consumer products, that are prevalent in the general population. PFOS is associated with immune system suppression, including decreases in antibody responses to vaccines and increases in the risk of childhood infections. PFOA is associated with, among other things, high cholesterol, increased liver enzymes, pregnancy-induced hypertension, testicular and kidney cancer, and immune system suppression, including decreases in antibody responses to vaccines. Moreover, these toxic endpoint effects occur at extremely minute concentrations and, in most cases, at levels that are an order of magnitude lower than conventional contaminants.

5.     In 2016, confronted with PFOS and PFOA contamination, the U.S. Environmental Protection Agency ("EPA") issued federal SDWA Lifetime Health Advisories recommending the individual or combined levels of PFOS and PFOA in drinking water be at or below 70 parts per trillion ("ppt"). More recently, New Jersey has acted to regulate these contaminants of emerging concern. Among other things, in June 2020, NJDEP adopted more stringent regulations establishing maximum contaminant levels ("MCLs") (which are drinking water standards) and groundwater quality standards (which are health-based standards applicable to groundwater) for PFOS and PFOA. For PFOS, those standards are 13 ppt, and for PFOA, those standards are 14 ppt. N.J.A.C. 7:9C-1.7(c)1, 7:10-5.2(a)(5). In enacting the more stringent standards, NJDEP

concluded that EPA's Lifetime Health Advisory level of 70 ppt is not sufficiently protective of human health based on data from both laboratory animal studies and human studies.

6.     For decades, the United States has released PFAS, including PFOS and/or PFOA, into the environment from its use, handling, and storage of aqueous film-forming foam ("AFFF") at its facilities throughout the United States, including facilities in New Jersey. These actions have created substantial hot spots of PFAS, including PFOS and PFOA, contamination at federal facilities across the country, including New Jersey.

7.     AFFF is used to fight fuel and other flammable liquid fires, as well as for fire suppression. When the AFFF concentrate is mixed with water, a foam solution is formed. The foam is sprayed onto fire to produce an aqueous film, which blocks the fire's supply of oxygen, generates a cooling effect, creates an evaporation barrier, and prevents re-ignition. The United States is one of the country's largest users of AFFF. AFFF contains PFAS, including PFOS and/or PFOA, and/or their precursors (i.e., substances that break down in the environment into PFOS or PFOA). When used in accordance with its intended application, AFFF released PFAS, including PFOS and/or PFOA, into the environment and contaminated New Jersey's groundwater, a significant source of drinking water for New Jersey's residents. As a reference, a single firefighting training event can release thousands of gallons of foam-laced water into the environment. In addition to using AFFF to put out actual, and suppress potential, fuel fires, the United States trained with AFFF at its facilities in New Jersey and has done so for decades.

8.     Although the United States has taken measures to address the impacts of PFOA and PFOS in onsite public drinking water wells, the acts of the United States at its facilities in New Jersey have caused and/or contributed to the contamination that presents an imminent and substantial endangerment  to onsite and offsite drinking water supplies in New Jersey with PFOS

and PFOA within the meaning of 42 U.S.C. § 300i and N.J.S.A. § 58:12A-6 due to discharges of AFFF at the federal facilities.

9.      Investigation of AFFF-related contamination affecting drinking water supplies in New Jersey is ongoing and in its incipient stages. Information gathered to date by the United States from groundwater monitoring wells at federal facilities in New Jersey have shown the presence of PFOS or PFOA in concentrations ranging up to multiple orders of magnitude higher than New Jersey's groundwater quality standards and the federal EPA's Lifetime Health Advisory level of 70 ppt. Data collected by EPA from drinking water wells indicates exceedances of New Jersey's MCLs for one or both constituents at community drinking water wells and private wells located within and/or outside the boundaries of various federal facilities in New Jersey. In some cases, the exceedances and detections are within wellhead protection areas onsite and/or offsite and, in some cases, involve private wells within or outside wellhead protection areas. Concentrations of PFOA and PFOS also have been detected below the MCLs and groundwater quality standards, which present a threat of future exceedance of those standards as the contaminants continue to migrate unchecked throughout the subsurface environment at and near the federal facilities. The United States continues to store and use AFFF—albeit limited to emergency responses—containing PFAS and/or their precursors at its facilities in New Jersey.

10.      The United States Congress enacted SDWA in 1974 to ensure that public water supply systems meet minimum national standards for the protection of public health. SDWA recognizes that states play an important part in administering and enforcing drinking water standards.

11. SDWA provides for a state to obtain "primary enforcement responsibility for public water systems." 42 U.S.C. § 300g-2. New Jersey has met the statute's requirements and has received authorization from EPA to enforce SDWA program. Accordingly, New Jersey is empowered by SDWA to enforce that statute. *See* 44 Fed. Reg. 69003-02 (Nov. 30, 1979).

12. New Jersey also enacted its own version of SDWA, NJSDWA, in 1977. Pursuant to NJSDWA, in addition to the enforcement authorities provided to NJDEP pursuant to that statute, NJDEP is designated as the agency that has "primary enforcement responsibility under the Federal Safe Drinking Water Act." N.J.S.A. § 58:12A-2.

13. The actions NJDEP is authorized to undertake in fulfillment of New Jersey's enforcement mandate under SDWA and NJSDWA include, but are not limited to: (a) reimbursement of the costs incurred by NJDEP to investigate violations of SDWA and NJSDWA, and (b) injunctive relief necessary to address actual, and to prevent threatened, injuries to New Jersey's drinking water supplies, including any such injuries and threats that present an "imminent and substantial endangerment" of the health of New Jersey residents caused by PFOS and/or PFOA. *See* 42 U.S.C. § 300i; *see also* N.J.S.A. § 58:12A-6. NJSDWA defines "water system" as "a system for providing potable water to any person" and does not limit the definition to public water systems or wellhead protection areas. N.J.S.A. § 58:12A-3(s).

14. Because it has been delegated primary authority for the enforcement of SDWA program in New Jersey, NJDEP has authority to institute a civil action against the United States to remedy the PFAS contamination affecting and threatening New Jersey's drinking water and drinking water sources pursuant to the "federal agencies" provision of SDWA. *See* 42 U.S.C. § 300j-6; *see also* N.J.S.A. § 58:12A-6; 42 U.S.C. § 300i. Pursuant to SDWA's savings provision preserving all state law authorities that go beyond those provided under SDWA and waiving

federal sovereign immunity for claims brought under such authorities, NJDEP is also authorized

to assert claims against the United States pursuant to NJSDWA, including claims under the

imminent and substantial endangerment section of NJSDWA for both public and nonpublic

water systems, including private wells. *See* 42 U.S.C. § 300j-8(e); N.J.S.A. § 58:12A-6.

15.    Thus, pursuant to 42 U.S.C. §§ 300i and 300j-8(e), in the case of an "imminent

and substantial endangerment" to human health resulting from discharges of  "a contaminant

which is present in or is likely to enter a public water system or an underground source of

drinking water," NJDEP is authorized to institute a civil action under the federal SDWA against

any person, including the United States, who has "caused or contributed to the endangerment" of

a public water system, as well as under NJSDWA with respect to a public or nonpublic water

system, including private wells.

16.    Because the PFAS contamination present in or threatening to enter drinking water

supplies poses an imminent and substantial endangerment to human health, NJDEP seeks, inter

alia, injunctive relief; recovery of reasonable costs of any investigation, inspection, or

monitoring that led to the discovery of the violation; recovery of reasonable costs incurred and to

be incurred by New Jersey in removing, correcting, or terminating the adverse effects resulting

from the United States' violation, including costs to determine the extent of contamination

emanating from the federal facilities; and an order requiring the United States to remediate to

acceptable levels , provide alternative water supplies to residents whose drinking water has been

impacted, and/or conduct medical monitoring for New Jersey residents who have been exposed

to PFAS contamination in drinking water supplies. *See* N.J.S.A. § 58:12A-6. Furthermore,

pursuant to § 300i of SDWA, NJDEP seeks injunctive relief ordering the United States to control

the source of PFOS and PFOA that is contributing to the imminent and substantial endangerment

to the health of New Jersey residents and to clean up the PFOS- and PFOA-contaminated soils

endangering New Jersey's drinking water and drinking water sources to New Jersey MCL levels.

## THE PARTIES

17.    Plaintiff NJDEP is a principal department within the Executive Branch of the

State government. NJDEP maintains its principal offices at 401 East State Street, Trenton, New

Jersey 08608. Pursuant to the authority vested in the Commissioner of NJDEP by N.J.S.A. §

13:1D-1 et seq., NJDEP is vested with the authority to conserve natural resources, protect the

environment, prevent pollution, and protect the public health and safety. *See* N.J.S.A. §§ 13:1D-

9, 58:10-23.11b, 58:10A-3. EPA has delegated NJDEP to act as the primary agency for the

enforcement of the SDWA in New Jersey. *See* 44 Fed. Reg. 69003-2 (Nov. 30, 1979). NJSDWA

authorizes NJDEP to institute a civil action under NJSDWA. *See* N.J.S.A. § 58:12A-6.

18.    Defendant the United States of America, including all federal government

agencies and departments responsible for the acts alleged in this action, is a sovereign nation and

national government and maintains offices at the offices of the President at the White House,

1600 Pennsylvania Avenue, Washington, D.C. 20500.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331,

28 U.S.C. § 1346, and 28 U.S.C. § 1367.

20.    This Court has the authority to grant declaratory relief, 28 U.S.C. § 2201, as well

as further relief requested in this Complaint, including injunctive relief, 28 U.S.C. § 2202.

21.    The home venue for this action is proper in the United States District Court for

the District of New Jersey pursuant to 28 U.S.C. § 1391, because the acts described in this

Complaint occurred in the District of New Jersey.

22.     This Complaint is being filed directly into the AFFF Multi District Litigation currently pending in the United States District Court for the District of South Carolina—*In re: Aqueous Film-Forming Foams Products Liability Litigation*, 2:18-mn-02873-RMG (D.S.C.)—pursuant to Case Management Order ("CMO") 3 [Dkt. No. 72] for pretrial proceedings only. Plaintiff does not waive its designated home venue of the United States District Court for the District of New Jersey where Plaintiff would have filed this Complaint but for the CMO permitting direct filing in the United States District Court for the District of South Carolina..

23.     Because this action does not constitute a citizen's civil action under 42 U.S.C. § 300j-8, there is no prerequisite for Plaintiff to provide notice as would be required pursuant to that provision.

24.     The United States has waived its sovereign immunity under SDWA, specifically, 42 U.S.C. § 300j-6(a)(2) and 42 U.S.C. § 300h-7(h).

## FACTUAL ALLEGATIONS

### Groundwater

25.     Groundwater—that is, water that exists beneath the Earth's surface—is an extremely important natural resource for the people of New Jersey. More than half of New Jersey's population, or roughly 4.5 million people, obtains drinking water from groundwater sources, and more than 900 million gallons of water per day are used for that purpose.

26.     Private and public wells, which provide access to groundwater, are used in residential communities surrounding the federal facilities where AFFF was transported, stored, used, released, spilled, and/or disposed. Wells are used for drinking water, cooking, showering, as well as irrigation, among other things.

27.     AFFF is a significant source of PFOS and PFOA contamination in groundwater.

28.     Investigations at the United States facilities and their surrounding communities in New Jersey have revealed elevated levels of PFOS and PFOA in groundwater and/or drinking water wells at and surrounding those facilities, which include but are not limited to, the Joint Base McGuire-Dix-Lakehurst, Naval Weapons Station Earle, and the Naval Air Warfare Center Trenton.

## AFFF

29.     AFFF is a fire-suppressing foam used to extinguish flammable liquid fires, including jet-fuel fires, aviation-related fires, hangar fires, ship fires, and chemical fires and is also routinely used to train firefighters and test firefighting equipment. AFFF has been purchased and used by the United States at its New Jersey facilities for decades.

30.     AFFF contains PFAS and/or their precursors, which are highly fluorinated synthetic chemical compounds that include carbon chains containing at least one carbon atom on which all hydrogen atoms are replaced by fluorine atoms. The PFAS family includes PFOS and PFOA.

31.     When used as intended during a firefighting event or training exercise, AFFF can cause hundreds, if not thousands, of gallons of foamy water laced with PFAS, including PFOS and/or PFOA, and/or their precursors to enter the environment in a variety of ways, including but not limited to, onto soil and through groundwater.

### PFOS and PFOA Pose an Imminent and Substantial
### Endangerment to Human Health of New Jersey Residents

32.     PFAS are a family of chemical compounds containing fluorine and carbon atoms. PFAS have been used for decades to produce a variety of products—including AFFF—that are heat resistant, stain resistant, long lasting, and water and oil repellant. The PFAS family of chemicals is entirely manmade and does not occur in nature. PFOA and PFOS are the most

thoroughly studied PFAS chemicals. They bioaccumulate (build up in the body) and remain in the body for many years after exposure ends, and they have been shown to be toxic at very low concentrations.

33.    PFOA and PFOS have characteristics that cause extensive and persistent environmental contamination. Specifically, they are highly mobile and persistent. They are mobile in that they are soluble in water and adsorb poorly (stick) to soil particles, rendering them capable of being readily transported through the soil and into groundwater where they can migrate long distances. And they are persistent in that they do not biodegrade or chemically degrade in the environment or in conventional treatment systems for drinking water. As a result, they have been widely dubbed "forever chemicals."

34.    The combined effects of their mobility and persistence in the environment, coupled with their potent toxicity at extremely minute concentrations, render PFOS and PFOA particularly dangerous contaminants for drinking water supplies derived from groundwater when they are released into the subsurface environment. The unusually high propensity of PFOS and PFOA to persist in the environment, as compared with conventional contaminants such as petroleum hydrocarbons and chlorinated volatile organic compounds—CVOCs, has been found to result in groundwater plumes extending from areas of discharge of up to 10 times longer than conventional groundwater contaminants. Thus, the risk of contamination to water supplies derived from groundwater presented by PFOS and PFOA render them capable of contaminating water supplies at far greater distances from discharge source areas than in comparison to conventional contaminants. In short, once PFAS are applied, discharged, disposed of, or otherwise released onto land or water, those compounds migrate rapidly through the environment and into groundwater, resist natural degradation, and create an unprecedented degree of causing

harm to humans through the resulting contamination of drinking water supplies. It is difficult to imagine a more dangerous contaminant for drinking water sources.

35.     PFOA and PFOS bioaccumulate, biopersist, and biomagnify in people and other organisms and are readily diffused in all environmental media, including surface water, groundwater, and air, which can directly adversely affect New Jersey's valuable drinking water supplies.  Consumption of very low concentrations of PFOA and/or PFOS in drinking water overwhelms the exposures from other sources such as food and consumer products that are prevalent in the general population, with increases in blood serum PFOA and PFOS levels more than 100 times the concentrations of PFOA and PFOS in drinking water. Furthermore, PFOA and PFOS body burdens remain elevated for many years after exposure to contaminated drinking water ends.

36.     PFOA and PFOS cause multiple toxic effects in laboratory animals, including among others, tumors; liver damage; immune system suppression; reproductive, neurobehavioral, endocrine (e.g., thyroid), and hematological (i.e., blood cell) effects; and delayed growth and development of the fetus and offspring. Some of these effects occur at very low doses.

37.     PFOS and PFOA are associated with a variety of adverse health effects in humans and are particularly dangerous for pregnant woman and children.

38.     PFOS exposure is associated with immune system suppression including decreases in antibody responses to vaccines and increases in risk of childhood infections and increased serum cholesterol. PFOA exposure is associated with, among other things, hypercholesteremia (i.e., high cholesterol); increases in certain liver enzymes (indicating liver damage); testicular and kidney cancer; ulcerative colitis; immune system suppression including

decreases in antibody responses to vaccines; and developmental effects including pregnancy-induced hypertension, preeclampsia, and decreased birthweight.

39.     Fetuses and newborns are particularly sensitive to PFOS and PFOA toxicity. Further, exposures to newborns are higher (compared to other subpopulations) through breastmilk or prepared formula when drinking water is contaminated with PFOS and/or PFOA.

40.     Recognizing the threat to human health posed by PFAS chemicals, EPA established a drinking water Provisional Health Advisory level for short-term exposure to PFOS of 0.2 parts per billion (200 ppt) and PFOA of 0.4 ppb (400 ppt) in 2009. Thereafter, in 2016, EPA further revised those levels in its Lifetime Health Advisory for PFOS and PFOA, warning that drinking water containing PFOA and PFOS above a combined value of 70 ppt poses a risk of adverse human health effects. NJDEP concluded that EPA's Lifetime Health Advisory of 70 ppt is not sufficiently protective of human health based on data from both laboratory animal and human studies.

41.     In order to protect its residents, in June 2020, NJDEP adopted more stringent regulations than EPA's Lifetime Health Advisory establishing MCLs and specific groundwater criteria for PFOA (14 ppt) and PFOS (13 ppt), for purposes of drinking water requirements, site remediation activities, and regulated discharges to groundwater. *See* N.J.A.C. 7:9C-1.7(c)1, 7:10-5.2(a)(5).

42.     Contamination that has entered or is likely to enter drinking water supplies and sources thereof in New Jersey with PFOS and/or PFOA above the MCL levels presents an imminent and substantial endangerment to human health of New Jersey's residents.

43.    The discharge of AFFF by the United States at federal facilities in New Jersey is a significant source of PFOS and PFOA contamination in the environment and drinking water, including public and non-public water systems such as private wells.

**AFFF Use at United States Facilities and
the Resulting PFAS Contamination of Drinking Water Supplies**

44.    The United States started to purchase and use AFFF-containing PFAS, including PFOS, PFOA, and/or their precursors, in the 1970s for firefighting training activities and to extinguish fuel-based fires at its facilities across the country, including in New Jersey.

45.    Since that time, the United States has been one of the country's largest users of AFFF.

46.    AFFF is discharged directly on the ground during emergencies as well as training exercises and would revert from foam to a liquid solution allowing PFOS and/or PFOA to travel to surrounding groundwater, causing contamination onsite and offsite. In addition to such discharges, additional releases of PFAS-containing AFFF occurred via testing of equipment, false alarms, equipment malfunctions, and other incidental releases over the decades at different locations on federal facilities throughout the United States and New Jersey.

47.    The United States has in recent years publicly acknowledged that there is a PFAS crisis on and surrounding its facilities across the United States and New Jersey as a result of the extraordinary degree of risk to human health presented by PFOS and PFOA contamination of drinking water supplies. As a result, the United States has started to act to identify and address such contamination.

48.    The United States tested 524 Department of Defense ("DOD") operated drinking water systems between June 2016 and August 2017 and identified 24 such systems where the drinking water exceeded EPA's Lifetime Health Advisory level of 70 ppt for PFOS and PFOA.

The United States also sampled private drinking water wells in instances of a suspected or known release that migrated offsite around the country, including in New Jersey at the Joint Base McGuire-Dix-Lakehurst, Naval Weapons Station Earle, and the Naval Air Warfare Center Trenton. As of August 2017, the United States tested 2,445 offsite public and nonpublic drinking water systems throughout the country. Of those tested, 564 public or nonpublic drinking water systems tested above EPA's Lifetime Health Advisory level of 70 ppt.

49.    As of August 2017, the DOD identified 401 facilities nationally with known or suspected discharges of PFOS or PFOA where it sampled groundwater. To date, a total of 1,621 groundwater monitoring wells across 90 of these installations had concentrations in excess of EPA's Lifetime Health Advisory level of 70 ppt. As of the end of 2019, the DOD has expanded the list of facilities to be sampled where there are known or suspected release of PFOS and/or PFOA from 401 to 651 nationally.

50.    In response to this human health crisis, the United States has started to take action.

51.    In a July 2019 public announcement, the Secretary of Defense announced the establishment of the Per- and Polyfluoroalkyl Substances Task Force ("PFAS Task Force") to address a topic of growing concern—the release of PFAS by the United States into the environment that was affecting hundreds of military facilities and the surrounding communities around the country, including New Jersey. In order to protect the health and safety of service members, their families, DOD civilian workforce, and the communities in which these facilities are located, the PFAS Task Force has purportedly focused on three goals: (i) mitigating and eliminating the use of AFFF containing PFOA and PFOS and/or their precursors, (ii)

understanding the impacts of PFAS on human health, and (ii) fulfilling cleanup responsibility related to PFAS.

52.    The 2020 National Defense Authorization Act ("NDAA") requires the development of PFAS-free foam and the phase out of AFFF but not until October 2024. Further, the 2020 NDAA prohibits the use of AFFF for training exercises at military installations.

53.    In its March 2020 progress report, the PFAS Task Force stated that in order to protect service members and prevent release to the environment, the DOD only uses AFFF containing PFAS to respond to emergency events.  Further, the PFAS Task Force stated that the DOD has taken actions to address PFAS contamination in drinking water, but only if the drinking water exceeded EPA's Lifetime Health Advisory level of 70 ppt.

54.    Although on a more limited basis, existing stocks of AFFF containing PFAS and/or their precursors are still stored and used at federal facilities for emergency responses in New Jersey.

**PFAS Ongoing Contamination of Drinking Water Supplies at
United States Facilities in New Jersey and Surrounding Communities**

55.    The United States has announced its intention to ensure that onsite drinking water supplies containing 70 ppt or above of PFOS or PFOA are not used for human consumption. In multiple communications with NJDEP, the United States has not committed to take action in a timely manner to address the imminent and substantial endangerment to the human health of New Jersey's residents resulting from sources of PFOA and PFOS contamination in New Jersey's drinking water supplies to New Jersey's mandated levels.

56.    Investigations at the United States' facilities in New Jersey continue, but those completed to date have revealed elevated levels of PFOS and PFOA in groundwater at and surrounding those facilities. Affected federal facilities in New Jersey include, but are not limited

to the Joint Base McGuire-Dix-Lakehurst ("JBMDL"), Naval Weapons Station Earle, and the

Naval Air Warfare Center Trenton. Groundwater surrounding these facilities is used for, among

other things, private wells supplying drinking water.

57.     JBMDL is a tri-service, joint-installation partnership complex comprised of the

McGuire Air Force Base ("McGuire"), the Naval Air Engineering Station Lakehurst ("NAES-

Lakehurst"), and the Fort Dix Army Base ("Fort Dix"). The tri-service bases were combined in

October 2009, forming JBMDL. McGuire is the home of the 305th Air Mobility Wing. Land

uses on JBMDL include administrative, aircraft operations and maintenance, airfield,

community, housing, industrial, medical, open space, outdoor recreation, and water. The

majority of the 3,596-acre base is airfield supporting two active runways. The Fort Dix area is a

permanent Class 1 Army installation with an area of approximately 30,697 acres. The NAES-

Lakehurst encompasses 7,382 acres and has been used continuously for research, maintenance,

firefighter training, testing, and disposal activities by the Navy since the 1920s. The JBMDL

installation covers approximately 42,000 contiguous acres of federal property to meet mission

needs. This combined installation complex is surrounded by an additional 58,000 acres of state

and federally managed land to protect against encroachment.

58.     More than 45,000 active duty, guard, reserve, civilian personnel and family

members, live and work on and around JBMDL. JBMDL is located 18 miles southeast of

Trenton, New Jersey. The combined population of municipalities surrounding JBMDL is

approximately 600,000 people.

59.     Decades of AFFF use throughout JBMDL has demonstrably contaminated

groundwater on and around the joint base.

60.    Offsite, the United States has done limited sampling of drinking water supplies, which revealed that PFAS contamination has migrated offsite and three private drinking water wells exist near the base with combined levels of PFOS and PFOA in exceedance of New Jersey's MCLs, ranging from 152 ppt to 1,688 ppt. Failure by the United States to act has forced NJDEP to conduct its own sampling given the endangerment to human health from the contamination and provide alternate water supply for impacts in excess of New Jersey's MCLs.

61.    The results of NJDEP's 2018 Waterways Study has provided an initial understanding of the offsite contamination caused by AFFF-related activities on JBMDL. With respect to onsite contamination, sampling in 2016 of 21 suspected release areas across the joint base revealed significant contamination of groundwater, with groundwater monitoring wells showing combined levels of PFOS and PFOA as high as 264,300 ppt.

62.    There are also two Navy bases in New Jersey where use of AFFF has contaminated the sites and is impacting surrounding private wells. One such base is the Naval Weapons Station Earle ("NWS Earle"). NWS Earle is located in Monmouth County, New Jersey, approximately 47 miles south of New York City and approximately 69 miles northeast of Philadelphia. NWS Earle consists of two areas, the 10,248-acre mainside area (located inland), and the 706-acre waterfront area. A Navy-controlled right-of-way containing a private road and rail line connects the two base areas. The Navy commissioned the facility in 1943, and its primary mission is to supply ammunition to the Atlantic fleet. An estimated 1,200 people either work or live at NWS Earle. The mainside area is located approximately 10 miles inland from the Atlantic Ocean in Colts Neck, Howell, and Wall Townships and Tinton Falls Borough. The combined population of these municipalities is approximately 100,000 people.

63.    At the Earle Military Sealift Command Fire Training School ("Earle MSC"), nine onsite groundwater monitoring wells revealed combined levels of PFOS and PFOA ranging from 75 ppt to 2,900 ppt. Two offsite nearby private wells located approximately one-half mile downgradient from the Earle MSC had combined levels of PFOS and PFOA above 70 ppt. The United States provided public water line connections for these affected residences. Two other private wells in the same neighborhood have elevated levels of PFOS and/or PFOA that do not exceed 70 ppt individually or combined, but do exceed NJDEP's MCLs, and the United States has not taken any steps to address this contamination and the resulting endangerment to human health.

64.    The former Naval Air Warfare Center in Trenton is located approximately 5 miles northwest of Trenton, 30 miles northeast of Philadelphia, and 2 miles north-northeast of the Delaware River. The facility consists of approximately 66 acres in Ewing Township, Mercer County, New Jersey. Mercer County has an approximate population of 360,000. Operational closure of the facility occurred on December 15, 1998, under the Base Realignment and Closure Act of 1993. Prior to this date, the facility, commissioned in 1951 by the Navy, was primarily used as a testing facility for military aircraft performance under simulated high and low altitude conditions. Despite its closure, the Navy remains responsible for environmental remediation activities related to former operations at the site. As part of those operations, the Navy maintains and operates a groundwater pump-and-treat remedy for site groundwater. Routine long-term and system performance monitoring programs are in place.

65.    Twenty-three of 38 onsite groundwater monitoring wells at the Naval Air Warfare Center revealed combined levels of PFOS and PFOA ranging from 178 ppt to 27,800 ppt.

Sampling of at least one offsite groundwater monitoring well revealed a combined PFOS and PFOA level of 112 ppt.

66.     Limited sampling at these Navy bases, as well as the use of higher criteria for sampling by the United States, only provides a limited understanding of the extent of contamination around these sites endangering hundreds of thousands of New Jersey residents.

67.     In some cases at the foregoing United States' facilities, the exceedances are within wellhead protection areas onsite and/or offsite and, in some cases, involve private wells within or outside wellhead protection areas.

68.     As investigation of AFFF-related contamination continues, it is expected that additional PFOA and PFOS will be detected not only in the immediate site areas, but in surrounding areas as well. Such investigation is necessary to ascertain the full scope of PFOS and PFOA contamination and to treat and/or return impacted drinking water supplies to levels below New Jersey's mandated MCLs that are safe for human health. The United States is liable for the cost of such investigation, treatment and remediation.

## FIRST COUNT
**Violations of the Federal Safe Drinking Water Act**
**(42 U.S.C. §§ 300f et seq.)**

69.     Plaintiff repeats each of the allegations in the paragraphs 1 through 68 above as though fully set forth herein in their entirety.

70.     The PFOS and PFOA contamination of drinking water at or impacted by its facilities in excess of New Jersey's MCLs for PFOS (13 ppt) and PFOA (14 ppt) presents an imminent and substantial endangerment to human health within the meaning of 42 U.S.C. § 300i.

71.     The imminent and substantial endangerment provision of SDWA allows the Plaintiff to "take such actions as [it] may deem necessary" in order to protect the health of New

Jersey residents if it possesses "information that a contaminant which is present in or is likely to enter a public water system or an underground source of drinking water . . . may present an imminent and substantial endangerment to the health of persons." 42 U.S.C. § 300i.

72.     Pursuant to the imminent and substantial endangerment provision, Plaintiff can "commenc[e] a civil action for appropriate relief, including a restraining order or permanent or temporary injunction." 42 U.S.C. § 300i(a). "Any person" who violates or fails to comply with an order issued by NJDEP may be enjoined and/or be subject to civil penalties. *See id.* A "person" is defined under SDWA as "an individual, corporation, company, association, partnership, State, municipality, or *Federal agency* (and includes officers, employees, and agents of any corporation, company, association, State, municipality, or Federal agency)." *Id.* § 300f(12) (emphasis added).

73.     Moreover, pursuant to the "federal agencies" provision of SDWA, any federal agency that "(1) own[s] or operat[es] any facility in a wellhead protection area; (2) engage[s] in any activity at such facility resulting, or which may result, in the contamination of water supplies in any such area; or (3) own[s] or operat[es] any public water system . . . shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting the protection of such wellhead areas, respecting such public water systems, and respecting any underground injection in the same manner and to the same extent as any person is subject to such requirements, including the payment of reasonable service charges." 42 U.S.C. 300j-6(a).

74.     NJDEP may "commen[e] a civil action" against any federal agency that violates SDWA. 42 U.S.C. 300j-6(a). The United States includes federal agencies, and the provision

broadly waives those agencies' sovereign immunity to suit under SDWA. *See id.* EPA has delegated authority to the Plaintiff to act as the primacy agency for the enforcement of SDWA in New Jersey. *See* 44 Fed. Reg. 69003-2 (Nov. 30, 1979).

75.    The United States has engaged and is engaging in activities that have caused or contributed to an imminent and substantial endangerment to the health of New Jersey water users, whose drinking water contains PFOA and/or PFOS in excess of New Jersey's MCLs. *See* 42 U.S.C. § 300i(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment against the United States as follows:

a.  Finding, pursuant to 42 U.S.C. § 300i(a), the United States liable for all costs to investigate, clean up and remove, treat, monitor, and otherwise respond to PFOS and PFOA contamination at and around the United States' facilities throughout New Jersey where AFFF was transported, stored, used, handled, released, spilled, and/or disposed so the contaminated and threatened drinking water supplies are treated and remediated and for such orders as may be necessary to provide full relief to address risks to the State of New Jersey, including the costs of:

    1)  Past and future testing of groundwater affecting or which may affect drinking water supplies at and around the United States' facilities throughout New Jersey where AFFF was transported, stored, used, handled, released, spilled, and/or disposed, and thus, likely caused PFOS and/or PFOA contamination;

2) Past and future treatment and remediation of groundwater affecting or which may affect drinking water supplies at and around the United States' facilities throughout New Jersey where AFFF was transported, stored, used, handled, released, spilled, and/or disposed and which contain levels of PFOS and/or PFOA in excess of New Jersey's MCLs until remediated to acceptable levels; and

3) Past and future monitoring of groundwater affecting or which may affect drinking water supplies at and around the United States' facilities throughout New Jersey where AFFF was transported, stored, used, handled, released, spilled, and/or disposed;

b. Ordering, pursuant to 42 U.S.C. § 300i(a), the United States to pay for all costs related to the investigation, cleanup, treatment, and monitoring of PFOS and/or PFOA contamination and threatened contamination of New Jersey's drinking water supplies at and around the United States' facilities throughout New Jersey;

c. Ordering, pursuant to 42 U.S.C. § 300i(a), the United States to provide, or pay for the provision of, an alternative water supply for any and all drinking water supplies that are presently contaminated in excess of New Jersey's MCLs for PFOA and/or PFOS at and around the United States' facilities throughout New Jersey;

d. Ordering, pursuant to 42 U.S.C. § 300i(a), the United States to pay for the cost of medical monitoring of residents whose drinking water supplies are known or are determined to have been contaminated in excess of New Jersey's MCLs for PFOA and/or PFOS at and around the United States' facilities throughout New Jersey;

    e.   Ordering, pursuant to 42 U.S.C. § 300i(a), the United States to abate or mitigate the PFOS and/or PFOA groundwater contamination  affecting or which may affect drinking water supplies that they caused at and around the United States' facilities throughout New Jersey;

    f.   Awarding Plaintiff costs and fees in this action, including reasonable attorneys' fees incurred in prosecuting this action, together with prejudgment interest, to the fullest extent permitted by law; and

    g.   Awarding Plaintiff such other relief as this Court deems appropriate.

**SECOND COUNT**
**Violations of the New Jersey Safe Drinking Water Act**
**(N.J.S.A. §§ 58:12A-1 et seq.)**

76.    Plaintiff repeats each of the allegations in the paragraphs 1 through 75 above as though fully set forth herein in their entirety.

77.    The PFOS and PFOA contamination in excess of New Jersey's MCLs for PFOS (13 ppt) and PFOA (14 ppt) caused by the United States as described above presents an "imminent and substantial endangerment to health of persons" within the meaning of N.J.S.A. § 58:12A-6 by exposing water users in New Jersey to PFOS and PFOA in drinking water.

78.    The imminent and substantial endangerment provision of NJSDWA allows Plaintiff  to "take such actions as [it] may deem necessary" in order to protect the health of New Jersey residents "upon receipt of information that a contaminant which is present in or is likely to enter a water system may present an imminent and substantial to the health of persons." N.J.S.A. § 58:12A-6.

79.    Pursuant to the imminent and substantial endangerment provision, Plaintiff can "bring a civil action" against any "person" who violates NJSDWA. *See id.* A "person" is defined

under NJSDWA as "any individual, corporation, company, firm, association, partnership, municipality, county, State agency or *federal agency*." *Id.* § 58:12A-3(j) (emphasis added).

80.    The United States has engaged and is engaging in activities that have caused or contributed to an imminent and substantial endangerment to the health of New Jersey residents whose drinking water contains PFOA and/or PFOS in excess of New Jersey's MCLs. *See* N.J.S.A. § 58:12A-6.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment against the United States as follows:

a.    Finding, pursuant to  N.J.S.A. § 58:12A-6, the United States liable for all costs to investigate, cleanup, remove, treat, monitor, and otherwise respond to PFOS and PFOA contamination affecting or which may affect water supplies at and around the United States' facilities throughout New Jersey where AFFF was transported, stored, used, handled, released, spilled, and/or disposed so the contaminated drinking water supplies are treated and remediated and for such orders as may be necessary to provide full relief to address risks to New Jersey, including the costs of:

1)    Past and future testing of groundwater affecting or which may affect drinking water supplies at and around the United States' facilities throughout New Jersey where AFFF was transported, stored, used, handled, released, spilled, and/or disposed and, thus, likely caused PFOS and/or PFOA contamination;

2)   Past and future treatment and remediation of groundwater affecting or which may affect drinking water supplies at and around the United States' facilities throughout New Jersey where AFFF was transported, stored, used, handled, released, spilled, and/or disposed and which contain levels of PFOS and/or PFOA in excess of New Jersey's MCLs until remediated to acceptable levels; and

3)   Past and future monitoring of groundwater affecting or which may affect drinking water supplies at and around the United States' facilities throughout New Jersey where AFFF was transported, stored, used, handled, released, spilled, and/or disposed;

b.   Ordering, pursuant to N.J.S.A. § 58:12A-6, the United States to pay for all costs related to the investigation, cleanup, treatment, and monitoring of PFOS and/or PFOA groundwater contamination affecting or which may affect New Jersey's drinking water supplies at and around the United States' facilities throughout New Jersey;

e.   Ordering, pursuant to N.J.S.A. § 58:12A-6, the United States to provide, or pay for the provision of, an alternative water supply for any and all drinking water supplies that are presently contaminated in excess of New Jersey's MCLs for PFOS or PFOA at and around the United States' facilities throughout New Jersey;

f.   Ordering, pursuant to N.J.S.A. § 58:12A-6, the United States to pay for the cost of medical monitoring of residents whose drinking water supplies are known or are determined to have been contaminated in excess of New Jersey's MCLs for PFOS or PFOA at and around the United States' facilities throughout New Jersey;

g.      Ordering, pursuant to N.J.S.A. § 58:12A-6, the United States to abate or mitigate

the PFOS and/or PFOA groundwater contamination affecting or which may affect

drinking water supplies that they caused at and around the United States' facilities

throughout New Jersey;

h.      Awarding Plaintiff costs and fees in this action, including reasonable attorneys'

fees, incurred in prosecuting this action, together with prejudgment interest, to the

fullest extent permitted by law; and

i.      Awarding Plaintiff such other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff is entitled to a jury trial and hereby demands a trial by jury.

Dated: January 14, 2021

**Attorneys for the Plaintiff, the
State of New Jersey, Department
of Environmental Protection**

By: */s/ Gwen Farley*
     Gwen Farley
     Deputy Attorney General
     R.J. Hughes Justice Complex
     25 Market Street
     P.O. Box 093
     Trenton, New Jersey 08625-0093
     Ph. (609) 376-2761

**KELLEY DRYE & WARREN LLP**

By: */s/ William J. Jackson*
     William J. Jackson, Esq.
     Also by: John D.S. Gilmour, Esq.
     515 Post Oak Blvd. Suite 900
     Houston, Texas 77027
     Ph. (713) 355-5000

Also by: David I. Zalman, Esq.
         Martin A. Krolewski, Esq.
         David M. Reap, Esq.
101 Park Avenue
New York, New York 10178
Ph. (212) 808-7800

**COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP**

By: Leonard Z. Kaufmann, Esq.
    Christina N. Stripp, Esq.
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Ph. (201) 845-9600

**LAW OFFICES OF JOHN K. DEMA, P.C.**

By: John K. Dema, Esq.
    Scott E. Kauff, Esq.
    John T. Dema, Esq.
    James Crooks, Esq.
1236 Strand Street, Suite 103
Christiansted, St. Croix
U.S. Virgin Islands 00820-5034
Ph. (340) 773-6142